IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 91-4572

---

PHYLLIS A. WOODALL and
JEANNIE S. COUTTA,

Petitioners,

versus

COMMISSIONER OF INTERNAL REVENUE,

Respondent.

---

Appeal from a Decision of the United States Tax Court

---

(June 12, 1992)

Before WILLIAMS and HIGGINBOTHAM, Circuit Judges, and McNAMARA,[*]
District Judge.

HIGGINBOTHAM, Circuit Judge:

Phyllis Woodall and Jeannie Coutta appeal a Tax Court judgment
finding additional taxes due in their 1982, 1983, and 1984 tax
years.  The dispute arises out of fire losses to two partnership
assets presenting issues of valuation and accounting for income.
We affirm.

I.

Woodall and Coutta were equal partners in El Paso
Cosmopolitan, a partnership operating two nightclubs, the Naked
Harem Show Bar and the El Paso Cosmopolitan Topless Show Bar.  On

---

[*]District Judge of the Eastern District of Louisiana,
sitting by designation.

April 5, 1982, the Cosmopolitan suffered extensive fire damage. Woodall estimated the value of the partnership assets destroyed at $90,000. The partnership pursued an insurance claim, but the insurer was insolvent and the partnership had no reasonable prospect of recovery by the end of 1982. The partnership claimed a deduction of $78,441 for the fire loss at the Cosmopolitan on its 1982 return. However, the schedule L balance sheet attached to the return, prepared by taxpayers' accountant, stated that the adjusted basis of all depreciable partnership assets at the beginning of 1982 was only $8,541.

On April 21, 1982, the Naked Harem sustained extensive fire damage. The partnership filed an insurance claim of $122,500, but received only $50,000 from the receivership estate of the insurance company. During 1983, the partnership spent $25,272 repairing fire damage at the Naked Harem and purchased replacement assets totalling $13,093. In August 1983, the partnership purchased the land, building and improvements at 6345 Alameda for $245,000. The partnership reported the $50,000 insurance recovery as taxable income on its 1983 tax return.

Upon audit of the taxpayers' and the partnership's returns for 1982-1984, the IRS increased the partnership's taxable income for each year, with excess income attributed equally to each partner. The revenue agent used the bank deposits plus cash expenditures method to reconstruct the gross receipts of the partnership and the taxpayers. The revenue agent also disallowed $69,991 of the partnership's claimed fire loss.

The IRS gave deficiency notices and Woodall and Coutta filed petitions to the Tax Court.

## II.

Internal Revenue Code § 165(a) allows a deduction for a loss sustained during the taxable year not compensated for by insurance or otherwise. The amount of available deductible loss is limited to the adjusted basis of the property at the time of the loss. 26 U.S.C. § 165(b). The Tax Court determined that the adjusted basis of the assets lost in the Cosmopolitan fire was $8,541 and disallowed the partnership's deduction of losses above that amount. The Tax Court valuation rested on the adjusted basis on the balance sheet statement submitted by the partnership with its 1982 return.

The taxpayers argue first that the Tax Court could not rely upon the balance sheet statement alone to prove that the adjusted basis of the property was only $8,54l, relying upon Portillo v. Commissioner, 932 F.2d 1128 (5th Cir. 1991). In Portillo, the IRS issued a deficiency notice solely on the basis of an inconsistency between the taxpayer's return and the figures on another party's 1099 form. We held that it was arbitrary and capricious to find a deficiency without investigating or corroborating the figures in the 1099 form provided by a third party. 932 F.2d at 1134. This case does not raise the concern of Portillo, however, because the IRS here relied upon the taxpayer's statement, not another's statement.

Second, the taxpayers argue that they have disproved the accuracy of the $8,541 figure because that figure would require

3

that deductions had been taken in prior years in excess of those legally allowed under 26 U.S.C. § 1011.  A taxpayer challenging the IRS's disallowance of a deduction bears the burden of proof.  Laney v. Commissioner, 674 F.2d 342, 349 (5th Cir. 1982).  The taxpayers presented evidence at trial that the original cost basis in the property was $93,569 and that the legally allowable depreciation in prior years was $16,421.  They argue that this evidence meets their burden of proving the adjusted basis of their loss.

In Laney v. Commissioner, 674 F.2d 342 (5th Cir. 1982), we held that where the IRS relied on facts in a schedule filled out and signed by the taxpayer, the taxpayer could not meet its burden of proof without financial records or other documentary evidence to refute or contradict the reliability of the schedule.  The taxpayer's testimony that the facts in the schedule were untrue was insufficient to rebut the tax return.  Id.

The evidence here tending to contradict the schedule was weaker than in Laney.  Here, there was only Woodall's claim that the property was worth more than $8,541.  She did not state unequivocally that the deductions had not been claimed in prior years.  She did not provide a credible explanation for the allegedly inaccurate information on the schedule nor did she present her tax returns for previous years to support her contention.  The taxpayers did not prove that the Tax Court's findings were clearly erroneous.

Taxpayers suggest that even if they did take excessive deductions in prior years, the proper result is to allow them the

4

1982 loss deduction and force the IRS to reopen their returns for those prior years. The amount of deductible loss is limited to the greater of the amount allowed as deductions or allowable as deductions. 26 U.S.C. § 1016. An amount has been "allowed" in a prior year if the Commissioner has not challenged it. Kilgroe v. United States, 664 F.2d 11687, 1170 (10th Cir. 1981). Thus, the Code contemplates allowed depreciations greater than those allowable by law. The IRS need not reopen the taxpayer's past returns but may use the lower adjusted basis resulting from excess depreciation in calculating the 1982 allowable loss.

## III.

The taxpayers assert that the $50,000 insurance recovery from the Naked Harem fire was non-taxable because the partnership purchased replacement property "similar or related in service or use" to the property converted within the time period required by 26 U.S.C. § 1033. The Tax Court agreed that the insurance recovery was non-taxable to the extent of the repairs made and the replacement assets bought for the bar, $38,365 total, but held that the purchase of the land, building and improvements at 6345 Alameda did not qualify as property "similar or related in service or use."

The taxpayers rely on Davis Regulator Co. v. Commissioner, 36 B.T.A. 437 (1937) and Rev. Rul. 83-70, 1983-1 C.B. 189, for the proposition that the purchase of a building can be a replacement property for an involuntarily converted leasehold. This proposition is sound. The taxpayers' problem is that they did not suffer an involuntary conversion of their leasehold. The loss was

5

only to their improvements.  In <u>Davis Regulator</u>, in contrast, the taxpayer had been forced to sell its leasehold because of a threat of condemnation.  The fire in the Naked Harem did not force the taxpayers to buy the nightclub buildings; their lease interest had remained intact.  In fact, taxpayers reopened the nightclub before deciding to purchase the building.  The purchase of the building replaced no damaged property and the funds used for its purchase do not fall within § 1033.

IV.

Finally, taxpayers argue that the calculation of taxable income using the bank deposits plus cash expenditures method of calculating income was arbitrary and capricious and therefore not entitled to a presumption of correctness.  Under the bank deposits plus cash expenditures method, the IRS agent totals all deposits into taxpayers' accounts during the year.  The agent then looks at the amount claimed by the taxpayer as business expenses for the year and deducts from that amount all business checks written by the taxpayer that year.  Any amounts claimed as business expenses but not accounted for by a business check are considered cash expenditures.  Total income is the amount of bank deposits plus cash expenditures.

We have approved the use of this indirect method of proving income, particularly where the incompleteness of the income records makes other methods difficult.  <u>Mallette Bros. Const. Co. v.United States</u>, 695 F.2d 145, 148 (5th Cir. 1983) (IRS is authorized to use whatever method seems appropriate to reconstruct taxpayer's

6

income).  We see no reason why this method may not be used to determine partnership income and the taxpayers have pointed to no general problem with applying the method here.  The burden is on the taxpayer to demonstrate any unfairness or inadequacy of the method.  Price v. United States, 335 F.2d 671, 676 (5th Cir. 1964).

The taxpayers object specifically to the way their taxable income was calculated.  First, they argue that the agent double-counted distributions made from the partnership to the individual partners.  The Tax Court found, however, that the agent excluded amounts which were transferred from the partnership account to the taxpayers' personal accounts.  The agent counted only amounts that were deposited directly from partnership cash proceeds into personal accounts.  If she had not counted these amounts they would not have been counted at all because they were never deposited into the partnership account.  This calculation correctly reflects the amount of income earned by the partnership.

Second, the taxpayers argue that the agent erred in not taking into account the effects of capital contributions made by the partners to the partnership during 1982.  The IRS argues that the taxpayers cannot point to any evidence in the financial records to indicate that these contributions actually occurred.  The taxpayers assert that these capital contributions are evidenced by its 1982 tax return which claims partners' contributions to partnership capital totaling $16,172 and that it would be inconsistent to hold them bound by their statement of adjusted basis but not for their capital contributions.  This argument ignores the difference

7

between an admission against interest and a self-serving statement. The revenue agent found no checks representing capital contributions to the partnership in any of the taxpayers' personal bank accounts. The taxpayers do not dispute this finding. Any contributions in the form of property or undeposited cash would not affect the income calculation. Therefore, the taxpayers have not shown that the agent's computation of income is incorrect.

Third, the taxpayers argue that the agent erred in failing to count as business expenses checks drawn on the partnership accounts and made payable to "Cash." Taxpayers claim that this money was used to pay business expenses to suppliers who would not take the partnership's checks. The Tax Court found that the taxpayers had presented no evidence to support their contentions other than Woodall's "vague testimony" which it did not find credible. The Tax Court's determination that these checks were not sufficiently documented to be deductible as business expenses was not clearly erroneous.

The judgment of the Tax Court is AFFIRMED.